The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the court. Welcome everyone to the Fourth Circuit Court of Appeals this morning. Good to have you here. We have four interesting cases. We look forward to discussing them with counsel. In the first case, number 18-16-61, Faulconer v. Centra Health. Mr. Grimes. Good to see you again, Mr. Grimes. Good to see you again, Judge. Ladies and gentlemen, may it please the court and good morning. Again, my name is Terry Grimes. I represent Philip Faulconer with respect to this appeal which comes to you on summary judgment from the Western District of Virginia. In a sentence with respect to the facts, Faulconer filed a charge of discrimination with the EOC in the summer of 2016, hand-delivered that charge and supporting documents to H.R. Sherry Bennett on August 5, 2016. I'll come back to that in a moment. Received his notice of right to sue dated August 22, 2016 and was fired about eight weeks later on October 27, 2016 after nearly 40 years of service there at the hospital. I should say, Centra Health owns and operates a hospital in Lynchburg, Virginia. Mr. Faulconer worked in the lab there for nearly 40 years. Those are the background facts. We raised two issues on appeal. The first concerns the district court's award of summary judgment. The second is related and concerns the district court's failure to permit Faulconer to file an amended complaint. The timeline of events is forth succinctly in the reply brief. I won't dwell on that unless you have any questions. The procedural posture of the case, as I said again, is summary judgment. So the parties conducted discovery, took decisions, briefed and argued summary judgment and that issue was heard by the district court. The retaliation claim has three familiar elements. The plaintiff engaged in protected activity, suffered an adverse employment action and that there was a causal connection between the first and the third element. The district court's error here is that it awarded summary judgment and ruled that a Title VII retaliation claim cannot have an AIDS discrimination charge as its predicate activity. There are three problems with that ruling. First, the district court overlooked the fact that the second charge of discrimination, the one filed after Mr. Faulconer was terminated, dated December 16, 2016, plainly says that Faulconer was fired, quote, in retaliation for previously filing a charge of discrimination with the EOC. So the legal underpinning for that first charge really doesn't matter all that much whether it was filed under Title VII or the for previously filing a charge with the EOC. That's obviously, do you have a question, Judge Harris? No, go on. Go on. That's obviously participation activity and its protected activity as this court held in DeMasters v. Carillion, which a case I'll never forget because it remains the first and only time I've had an opportunity to argue a case before President Trump's sister for the Third Circuit setting by designation as the Fourth Circuit in that particular case. But those are familiar concepts of law. That's not it. I'm sorry, so is it your position, I guess I'm really not following this point, is your first point that the district court is wrong that being fired in retaliation for an AIDS discrimination complaint to the EEOC, that that is protected activity for purposes of a Title VII retaliation claim? That would be protected activity. It would be protected activity. Under Title VII, so you can still... No, no, no, no, not under Title VII. Yeah, correct. But this is a Title VII case, right? Right. It was filed under Title VII. He moved to amend, and I'll get to that, Faulconer moved to amend under Rule 15. It's our position the district court should have granted it. But you're right. You can't pursue an ADA, ADEA retaliatory discharge claim under Title VII. That is obviously true. But he says in his complaint that he was fired because of the first EEOC charge. Because he filed a charge of discrimination with the EEOC. That's why he says he was fired. And the only one he filed before he was fired raised the ADEA discrimination claim, right? He describes it in his own complaint as a charge based on age discrimination. In his complaint, in his charge? In paragraph 11 of his complaint, he says that he was fired because of a charge based on age discrimination. Plaintiff filed a pro se charge of discrimination with somewhere in that first complaint. We agree with that. That's why we filed a motion for leave to amend, which I'll get to. You said that was a scrivener's error. Yes, sir. I mean, you admit that you should have done it. It was a scrivener's error is what you say it was. Yes, sir. And then the judge said it was way out of time. But that's inconsistent with our jurisprudence. I'll turn directly to that, the Rule 15 question. Rule 15 obviously provides that leave to amend shall be freely given when justice so requires. This can be done before trial, in the middle of trial, after trial, to conform the pleadings to the evidence. Our case law is perfectly clear. In Edward v. City of Goldsboro, for example, which cites the Supreme Court case of Foman v. Davis, this court held that when no prejudice results, an amendment, especially one as here that was intended to conform the complaint to the evidence developed during discovery, should have been granted. This court addressed that question squarely later in that opinion, and said, excuse me, in Sweetheart Plastic v. Detroit Farming, where this court said that the mere fact that the motion to amend was made the day of trial, in that case, the day of trial, did not unduly prejudice Detroit so as to require denial of the motion. Absent prejudice to the opposing party, and Judge Moon made no finding of prejudice. The mere fact that an amendment is offered late in the case, not enough to bar it. Now I'm quoting from this court. He said Rule 16 control, didn't he? He did. But we say, but here's what this court said. The district court made no finding of prejudice to Detroit. That's why this... Is that a Rule 16 case? Rule 15. Well, okay, but Judge King asked you, the district court in this case applied Rule 16B. Do you think that the district court applied the wrong rule? Yes. Should have applied Rule 15. Rule 15 governs motion. How come? Because Rule 16 talks about scheduling orders and compliance with scheduling orders, and in this case, there was a scheduling order that had a deadline for amendments. Right. But what this court said in the case I just cited, Sweetheart Plastic, is the district court made no finding of prejudice, concluding only that place... Did he have to make a finding of prejudice if he applied Rule 16? Yes. Yes. You have to read the Federal Rules of Civil Procedure together as a whole. And what the court said is that... You're saying that Rule 15 supersedes Rule 16. Maybe that's what I am saying, but in the Sweetheart Plastic... I'm not saying you're not right, but I'm just trying to ascertain what your argument amounts to. Our position is where the district court held that I'm rejecting the motion for leave to amend simply because it came too late, simply because it was not consistent with my scheduling order. This court held... Also because there was no good cause for that, and I guess I'm sort of struggling to figure out what is the value of a scheduling order if it can be ignored without good cause. What this court said in Sweetheart Plastics is... That was not a case where there was a scheduling order. I don't know whether that's the case. Well, it wasn't a Rule 16 case, and Rule 16 is all about how district courts have the authority to require compliance with their pretrial scheduling orders. I guess I'm just concerned about a regime under which, you know, no harm, no foul, pay no attention to the scheduling order if you don't care to. Let's assume all that's true. Let's just assume for sake of argument that all that's true. The district court completely overlooked the fact that his claim was also based on Title VII retaliatory discharge, and he had gone to the employer, made a written complaint about Markeem Smith, his newly appointed supervisor, saying they tried to hustle women in the lab, rubbed his hand in Jennifer Vaughn's hair, hugged the female employees, talked about his interest in pursuing... I'm sorry, when you say that the district court overlooked that, is any of that in the complaint? We referenced Title VII specifically. But the facts you just listed that you say the district court overlooked, they're not in the complaint. So how did the district court overlook them? Because those... Well, first of all, it's briefed in summary judgment, but those are the facts that led to the filing of the charge of discrimination. And Markeem Smith plainly told Faulkner, I'm retaliating against you because you complained and reported me to HR. So that should have been sufficient in our view under Title VII, under a Title VII retaliatory discharge case. So I've addressed the motion for leave to amend. I'll turn to the timing issue in case my opponent raises it. Only two months passed between the issuance of the notice of right to sue, that's August 22nd, and Faulkner's firing October 27th. And there are many cases that hold that two months is not too long. And finally, with respect to pretext, here a jury could find that centrist proffered reason for Faulkner's discharge was pretextual. Before he rocked the boat, he was the greatest thing since sliced bread. His 2015 review, which references 2014, was glowing. And that's an undisputed point. Philip treats his co-workers with respect and never lets personal issues interfere with his work, et cetera. HR Director Sherry Bennett said, I don't really remember getting any complaints about him. Sentra claims that it fired Faulkner as a result of a verbal altercation. But what happened on that day was rife with factual disputes. Faulkner denied that he was rude to anyone. Vice President Buchanan was called in by HR for a cover story we would submit. But whatever happened was so insignificant that he has no memory of what happened that day. Security was also called, but we deposed the security guard. He said, as far as I know, there was no incident. I was dismissed upon arrival. Again, we look at that as a cover story. But may I ask you a question? Yes, of course. So the district court, in granting summary judgment, said, in part, what I think you're responding to here, that you had not directed the district court to sort of enough evidence to create a jury issue on causation. But the district court also said, sort of in any event, it's too late. Like, none of the facts you're relying on are in your complaint. And so allowing you to proceed now past summary judgment based on a bunch of facts that aren't in the complaint, it's just too late. Can you explain to me why that's wrong? Because this was not a Rule 8 motion. This is not an Iqbal Twombly motion, which should have been filed early on during the proceedings, challenging the facts in the complaint. We're at summary judgment. The judge is supposed to consider the evidence at that point. OK, so I believe what the district court was trying to say is, this would be in the nature of a constructive amendment. Like, I would have to be allowing you to amend your complaint at this very late date after briefing on summary judgment when there is going to be substantial prejudice if a party is allowed, for the first time, to rely on a bunch of facts that were never put in the complaint. Except they were briefed. Explain to me why that was wrong. Because they were briefed and argued on summary judgment. It's the other side. Once you get to summary judgment, it really doesn't matter anymore what's in your complaint. It matters little. You're no longer tethered to the facts that were alleged in the complaint. Not necessarily. That's why this court— There are a bunch of cases saying that that constitutes a constructive amendment of the complaint, and that the district court has the discretion to deny it that late in the day. We didn't want a constructive amendment. We wanted an actual amendment. OK. Let me address the point about my opponent may raise, and they may say, well, we weren't aware of the EOC charts. They may say that. They've said that below. And I want to point you to the record where that's not the case, in case you need to address that in arguments. Let me get the appendix here. It may come up during argument. This is the deposition of HR Sherry Bennett. And I'm talking about the first charge of discrimination now. She says, and I'm on page 768, I do remember that Philip came to my office to present a document. Basically, he was unhappy with his performance review that year. He presented me with a document that he wanted to include in his record. That was on August 5th, August 5, 2016. And at the top of it, it had the EEOC charge number written across the top. You know, the way they write the charge numbers on the top of the complaint. So I know at that point in time, I knew about it. But I may have found about it sooner. So my point is, if they argue to you, well, we didn't know about the charge. There's the evidence. HR director said it was him. Can I ask you about that charge, the July EEOC charge? So the second charge is saying I was retaliated against for filing the first charge. So it seems to me the first charge needs to include some, it needs to preserve this basis, this Title VII discrimination that I raised harassment. I raised the issue of Mr. Smith's alleged harassment. Where is that in the July EEOC charge? It's not in the charge. It's in the letter he provided. He said, see attached or see insert or some such. And that's his long letter of May 1, 2016, where he talks about all the things I've just told you. So we have case law saying if it's not in the charge, then it's not preserved. We don't have authority to then consider things that are outside of the charge. Did he seek to clarify the charge to get the EEOC to amend it? With all due respect, I think this court was reversed on that point in Edelman versus, and I forget who the defendant was, that went up to the Supreme Court and the Supreme Court said that you consider other documents submitted by the charging party. The letter that's not given to his employer? It was hand delivered to the employer. This letter complaining about Smith, but that it came after the EEOC charge was filed? Yes, after August. It may have been with the EEOC charge, but it's not in the EEOC charge. He sent it to the EEOC. Bear in mind, also, this is a pro se filing. So the charges are liberally construed. And he submitted a letter, May 1, 2016, is the date of. Pro se in connection with both these EEOC charges? Yes, sir. Yes, sir. I'm just about out of town, out of town. Is that pro se rule like it's in criminal cases that applies here? Construe things liberally? Well, we got these habeas corpus cases where prisoners file pro se petitions all time. And we have to look at them liberally. Then the answer may be yes. I'm not familiar with that rule you're talking about. But can I, can I? Yes. The complaint was not pro se, right? Correct. Absolutely true. And again, I am sort of caught up on this fact that the complaint itself describes the July charge as alleging only age discrimination. So I guess I don't know how we get past that. The only boxes checked by the EEOC. I guess I'm saying, putting to one side what happened before the EEOC, the counsel complaint describes the July charge as based only on age discrimination. So can you tell me why that doesn't control? What counsel says, the boxes checked by the EEOC. It doesn't say anything about boxes. It just says that plaintiff filed a pro se charge of discrimination in July based on age discrimination. That's what the charge says. He also submitted a letter, which I've just told you about. It's in the record. And I'll find it while- The complaint doesn't say anything about the letter. It simply describes the charge. But you think that shouldn't control. That's fine. Yes. Thank you, Mr. Rimes. You got some rebuttal time. Mr. Treece. Good to have you here, Mr. Treece. Good to see you all. Thank you, your honors. May it please the court. My name is Joshua Treece. I represent Centra Health Inc. With me, I have my colleagues, Frank Friedman and Victor Cardwell, also on behalf of Centra. This appeal stems from plaintiffs' continual shifting legal and factual theories in an effort to overturn summary judgment on his Title VII participatory retaliation claim that was based solely on the filing of an ADEA charge in July, as you all know. As you all pointed out, in his July charge, Mr. Faulkner selected only age and retaliation in the basis of discrimination sections. No Title VII charges identified anywhere in that... No Title VII complaints identified anywhere in that July charge. Now, I'd like to just address Mr. Grimes' assertion that a May 1st letter was attached to the charge. It was not. We provided to this court SA-9, a supplemental exhibit. It has a file stamp that May 1st letter has a file stamp of August 3rd, 2016. That was not accompanying the July charge. That was a performance review account that he wrote on May 1st, 2015, did deliver internally at Centra, and then later submitted that to the EEOC in August of 2016. That is not in any way, shape, or form incorporated into his July charge. As this court is aware, Title VII and the ADEA are separate statutory schemes. They're in separate sections of the United States Code. As the Supreme Court has recognized, the drafters of the ADEA and the Congress that enacted it understood that age discrimination was qualitatively different from the kinds of discrimination addressed by Title VII. Congress, therefore, chose not to include age within discrimination forbidden by Title VII. This court and other courts have regularly and routinely recognized that ADEA participatory conduct cannot support a Title VII retaliation claim. There are numerous authorities cited by the district court below. We cite authorities in our brief. One other I will mention, which we referenced in argument below, is Sloop versus Memorial Mission Hospital. That is 198F3D147, a published Fourth Circuit case from 1999. In that case, the court held. Title VII retaliation claims are barred when the administrative charge, as here, alleges only age discrimination. Plaintiff's July charge was summarily dismissed by the EEOC less than a month after it was filed with no communication or coordination with CENTRA. CENTRA had no substantive input on that charge. All they received is not the May 1st letter that was sent to the EEOC separately in August. They received that EEOC letter, I mean, they received that May 1st letter earlier, but that, if anything, is oppositional conduct. And as this court is aware, he does not have an oppositional claim. He has a participatory retaliation claim. There is no oppositional claim in any complaint in this action, not even the proposed second amended complaint. Significantly, plaintiff never pursued any substantive allegations in his July charge. He never asserted any claim for substantive discrimination. The only claim before this court is not opposition, not complaining about Smith, not complaining about performance reviews. It is, I filed a charge in July. I am contending that I was terminated for filing that charge. I am contending that the July charge, which is an ADEA participatory act, is the but-for cause of my Title VII retaliation claim. Plaintiff has a tightly framed complaint alleging just Title VII participatory retaliation. He's asserted that in every complaint, even the proposed second amended complaint, that the court denied leave to amend. And I'll discuss that in a moment. In brief, plaintiff makes broad sweeping allegations about all manner of other conduct, reporting Smith, who was not in any way, shape, or form, involved in the termination decision at issue in this case. But Smith was his manager in the blood bank when he was removed for not getting blood banks of blood to patients timely. He makes all kinds of complaints about that, but as Judge Harris noted, none of that is in any complaint in this case, not even the proposed second amended complaint that was rejected. All of the allegations that he's making in brief predate the July charge. They have no bearing on the analysis before this court. They involve different actors that are not in any way involved in the termination decision. Despite plaintiff's attempt to expand his case on appeal, the issues relevant to determination here are limited, they're straightforward, and they're discreet. The District Court, the first question is whether the District Court abused its discretion in denying leave to amend. Clearly, the District Court did not. I'll discuss that in just a second. The second issue before this court is whether the District Court correctly found that as a matter of law, plaintiff cannot state a Title VII claim based on ADEA participatory conduct. He cannot. Those statutes do not cross-pollinate. And the final issue that we would ask this court to determine in the event it concludes that the District Court made any error below, which we, of course, disagree with, but if any error was made, it would be a harmless error because he cannot establish pretext and but-for causation that the July charge, and this is ignoring his claims, he can't establish pretext that the July charge alone was the but-for cause of his termination. There is no evidence in the record to support that. He relies on temporal proximity alone. And as this court has repeatedly recognized, temporal proximity may not be enough to get you past the prima facie causation component, certainly not enough to get you past the ultimate pretext causation proof. As this court is aware, the District Court granted summary judgment to Cintra because it correctly recognized the July charge was based solely on an ADEA violation and held Title VII does not forbid retaliation for making age discrimination complaints. Since plaintiff's Title VII claim does not map onto the conduct Title VII prohibits, summary judgment will be granted. Mr. Faulkner does not dispute this as you just heard an oral argument. Now, with respect to abuse of discretion, the District Court did not abuse its discretion. As Judge Harris noted, Rule 16 governs. Rule 16 says the court can do certain things in the scheduling order and must do certain things in the scheduling order. The one thing a court must do, a court, quote, must limit the time to amend pleadings in its scheduling order. That's Rule 16b3a. A court must do that. And that is for the efficient administration of justice. So you don't end up at summary judgment and the case changes to an entirely different theory with an entirely different set of facts. Rule 16b4 then provides the way you modify a scheduling order. And it provides a scheduling order may be modified only for good cause and with the judge's consent. Here, of course, the court had a scheduling order and the scheduling order consistent with Rule 16 said, except for good cause shown, any motion to amend must be filed no later than 45 days from the date of this order. Now, 45 days was July 6, 2017. That's important because shortly after that deadline expired, Faulkner moved to file his first amended complaint. So his first amended complaint was outside the window of the scheduling order. And he consulted with counsel for Cintra. We agreed and consented to that first amended complaint. So we didn't... That wasn't contested at all. That was not contested at all. It was a week after the scheduling order deadline. And so we weren't going to oppose that. It was early in the case. What I would note is the court found good cause from a lack of opposition and really, you know, in view of the timing with respect to... Good cause, if you consent. Well, that is good. That would be good. Yeah, well, but his order says... His order says for good cause found. So the court in its speech through orders, its order found good cause. So he already has one late amendment. Now, notably, the first amended complaint, like his original complaint, has a Title VII participatory retaliation claim only based solely on the filing of an ADEA charge in July. After the close of discovery, Sentra moved for summary judgment and pointed out in its first brief and summary judgment... And this is an issue that was preserved in our answers. Our answers to every complaint have preserved our defenses that he failed to exhaust his administrative remedies, that he failed to file a Title VII charge. All of those are preserved in our answers. But we pointed out in our first summary judgment brief that ADEA participatory conduct cannot support a Title VII claim. In response, plaintiff filed the motion to amend. This was nearly nine months after the scheduling order deadline, after one untimely amendment and good cause having been found, and after the close of discovery and after summary judgment. Significantly, plaintiff admitted in his motion to amend that he never asserted or even intended to assert an ADEA participatory retaliation claim in either his original or first amended complaint. In his motion for leave to the district court, Faulkner expressly admitted, and this is a quote, the complaint does not allege a claim for age discrimination or retaliation under the ADEA, only a claim for retaliatory discharge under Title VII. This is true. He admitted that his complaints up to that point had been limited to Title VII. They were not meant to be construed or interpreted as extending in any way to the ADEA. At no point in the motion to amend did Mr. Faulkner seek to explain the reasons for his failure to seek leave. He didn't explain why he couldn't have done it timely. He didn't explain why he was doing it now after summary judgment. All he said was that it was a Scribner's error. But let me make sure the court is aware. What's a Scribner's error? Right. So two things. It's certainly not a Scribner's error, Your Honor. A Scribner's error is a clerical error. This is Black's Law Dictionary. It's a clerical error, not an error that is the result of judicial determination or reasoning. Plaintiff's counsel made a reasoned decision, as you heard him just defend a moment ago, to not assert an age claim, to assert only a Title VII retaliation claim. Further, the wholesale omission of a claim is not a Scribner's error. This is not a situation where plaintiff said, we apologize in our motion to amend. We want to supplant Title VII with the 80. Scribner's error could be neglect. Well, not under Black's Law Dictionary. It could be neglect if it's a neglectful clerical error. But that's not what happened here. He didn't seek to take out Title VII. In his amendment, he seeks to keep Title VII and add an ADEA claim. So now he wants two retaliation claims, not replace one. So if it were a Scribner's error of the type where he says, I meant to write the words ADEA and cite the ADEA statute, he doesn't support that with his motion because that's not what he intended to do with this motion to amend. He intended to add an ADEA retaliation claim to his Title VII claim. Now, in denying leave to amend, the district court correctly applied the good cause standard under Rule 16b and disregarded Rule 15 standards because they are not applicable. The court correctly noted that once the deadlines in the scheduled order have expired, Rule 16 ceases to apply, excuse me, Rule 15 standards cease to apply and the good cause standard under Rule 16b4 governs. The district court held the touchstone of good cause under Rule 16b is diligence and the standard is not satisfied if the party seeking relief or that party's attorney has not acted diligently in compliance with the schedule. The court then concluded Plaintiff failed to act diligently and failed to carry his burden of showing good cause because he provided no explanation for why he didn't amend earlier, why he was waiting until nine months after the scheduling order deadline, why he was waiting until after the close of discovery. He just simply said without any explanation whatsoever, it's a Scribner's error and as the court is now aware, it is not. Would there have been any prejudice to your client if the district court had granted that motion? And Your Honor, this gets to your point first. Prejudice is not part of the analysis under the good cause standard. So we're under Rule 16, prejudice is not part of the analysis. It would have been prejudicial because although he makes all of these arguments in summary judgment and he tried to elicit some of that in depositions, we did not try to chase those factual issues because they are not relevant to the matter of was his July charge, ADEA charge, the but-for cause of his termination. Now he's got all these shifting sands and shifting legal theories of the but-for cause is not really my July charge, it's really I had oppositional conduct with respect to Markeem Smith. I'm sorry, I just meant, I may be misunderstanding your answer, but if he had just been entitled to add the ADA legal claim under which the July charge would have been protected activity, the factual predicate, it seems, would have been the same, was the July charge. I agree the factual predicate would have been similar in that instance if he did that, but he was not trying to just, his motion to amend and his proposed amending complaint didn't just have a supplanting ADEA with Title VII. He wanted to keep the Title VII, he wanted to have a Title VII claim and an ADEA claim and throw in all of these new allegations that he's putting forth on summary judgment. The court could have weeded that out on this. If he showed good cause, if he met his... If he had permitted the amendment that you're describing, where he had a claim under each of them, the court could have weeded that out if you're right that one of them applied and one of them didn't. Well, I mean, I don't know. One left the other one in, had a trial on the one. I don't know what the court could have done or would have done. You're the one who's talking about what he could have done. Sure, sure. I'm saying what plaintiff could have tried to do. I don't know what the district court would have ultimately done with that decision, but he has to surpass the good cause threshold to get to that point in the first place. He cannot do that. He said he would add the ADEA claim and leave the Title VII claim in there. He wanted two claims. He would add two claims. Based on the same set of facts, basically. If he grants leave to amend, that's correct. The court could have ruled on summary judgment that on those facts, summary judgment was available under Title VII, but not under ADEA. If he met his burden of good cause and the court consented to him doing that, that might be the case. Keep in mind, the court unilaterally denied a motion to amend. We didn't file a brief on that. He filed the motion for leave to amend. The court on its own issued its ruling saying that he failed to establish good cause. So the court acted without argument from Cintra on that point, which goes to show it's a clear determination and no abuse of discretion to find the lack of good cause. Again, the Rule 15 standards and the authority cited by plaintiffs simply do not apply because we are dealing with Rule 16. Were you asked to consent to that one? I believe... You consented the first time. I believe he may have sent something to us the same day he filed the motion. We did not consent. Now, I've already talked about Title VII and ADEA participatory activity. I didn't ask if you were not, didn't... The question you answered is different to the one that I asked. Oh, I'm sorry. We did not consent. I asked if you were requested to consent or asked to consent. He did... You said you didn't consent. Were you asked to consent? I believe he sent us an email the same day he filed his motion for leave and we were preparing a response. Were you asked to consent? We were, yes, yes. Yes, we were asked to consent by... You refused to consent. We did not consent, correct. The district court issued its ruling on its own. Even setting aside the lack of any actionable claim, even just looking at the facts of, okay, there is a July charge and then there is a termination. Could he ever surpass the pretext phase for causation? He absolutely cannot. I won't have time... Are you conceding that the... Showing? No, we're not conceding that. I think you're stronger arguing that. It's just so clear that he can't get the pretext phase. He can't... We pointed this out in briefs below and in our briefs to this court that he can't get to the prima facie showing a causation on his temporal proximity argument for numerous reasons, one of which... You're arguing harmless error. What I'm saying is the district court, yes, did not abuse its discretion in denying leave, was correct in its finding that ADA... But if he did, it was harmless error. But if he did, it's harmless error because there's no causation here. We're familiar with harmless error. Sure. I thought the district court actually held he can't meet the causation standard. I believe the district court at the end of its decision said that he didn't need to reach the pretext argument because he was denying leave to amend. There was no ADA claim and there's no prerequisite Title VII protected activity. But the district court also said two things. I thought... Maybe I'm reading the wrong opinion. I will take your word for it. You may very well be correct on that. I went on to say, first of all, it's way too late to raise all these new facts that weren't in the complaint. And plaintiff hasn't directed the court to any evidence that the individuals who fired him considered his accusations against Smith in their decision. Well, and that is true. So the court did reach that finding. I thought at the end, there was a reference to pretext. And forgive me if I'm misconstruing that. Obviously, the district court's ruling speaks for itself. Right. I just thought it seemed like it's not just harmless error. The district court also said there's no evidence of causation. Well, and there you go. And that's supported by the record. That is supported by the record because there is nothing tethering his July charge to his termination in any way. This was a result of intimidating and threatening conduct that he initiated on his own on October 25th. This is not some accumulation of performance issues that they have discretion as to when to act and then make that determination. This is the result of serious threatening conduct that occurred on a specific day that he chose to act and engage in that conduct. And they made the determination on that basis. One thing that must be clarified, I realize I'm running out of time, but one thing that must be clarified is they repeatedly said below and they repeatedly say in briefs to this court that Ms. Duncan, one of the subjects of the encounters with Mr. Faulkner that were threatening, that she on a previous occasion, he says after she learned of the EEOC charge, he stood beside her in a threatening manner invading his personal space, which he knew was threatening conduct because he had seen his cows at home on the farm doing that. That did not come in any way, shape or form during the EEOC charge or after the EEOC charge. He wrote that, SA 9, he wrote that in a May 1st, 2016 letter. It's the same letter he mentioned a moment ago and acknowledged in his deposition that that conduct occurred before May 1st, 2016. The July charge obviously filed July 26, 2016. That is in no way associated with the filing the EEOC charge. It is a gross misrepresentation of the record. There is nothing to tie the EEOC charge to the termination of Mr. Faulkner. And with that, unless the court has further questions. All right. Thank you, Your Honors. Thank you very much. Mr. Grimes. Yes. Two points in response. First, the motion for leave to amend was filed April 4th. Council was right. They did not oppose it. The order was entered by the court on April 10th. Six days later, there is no Rule 15 analysis. So the question becomes, in your words, Justice King, does Rule 16 take precedent over Rule 15? Because there's no reference to a Rule 15 analysis. Can I ask you a question? If we assume, just for the sake of argument for a moment, that Rule 16 does apply, do you have an argument as to why the good cause standard was met here? No. Okay. No. If Rule 16 trumps Rule 15 and the court's free to disregard Rule 15, the answer is no. But there ought to be a Rule 15 and acknowledgement that Rule 15 exists. This court has held time and time again that you can amend your pleadings before trial, during trial, after trial, et cetera. I found the letter that we're all talking about here from Mr. Faulconer. It's dated May 11, 2016. For your reference, it's in the record at JA1407 and pages following. And there, specifically, Mr. Faulconer talks about, I'm complaining about sex harassment, this Markeem Smith doing inappropriate things to women who work there and so forth. And remember, Markeem Smith said, I retaliated against you when you reported me to HR. So that's in the record. And it was received by the EEOC on May 2nd, which means it's right about the time the charge was received. Remember, the charge was mailed on July 26th. July 26th took three days to get there or some such. So they were received right about the same time. In any event, the EEOC had the letter before it issued its notice of right to sue on August 22nd. Those are my two points in conclusion. I thank you very much. Thank you, Mr. Grimes. We'll come down and read counsel and then turn to our next case.
judges: Robert B. King, Pamela A. Harris, Allison J. Rushing